AGNES URICK, APPELLEE, V. WESTERN TRAVELERS ACCIDENT ASSOCIATION, APPELLANT.

FILED APRIL 10, 1908.   No. 15,086.

1. **Mutual Accident Insurance:** CHANGE OF BENEFICIARY.   Section 6638, Ann. St. 1903, relative to mutual accident insurance companies, providing that any member shall have the right at any time with the consent of such corporation to designate a new and different beneficiary, *held* to require the consent of such corporation, notwithstanding the by-laws of the company provide that a beneficiary may be changed upon the written application of the member to the secretary.

2. ———: ———. A member of a mutual accident insurance association wrote a letter to the association requesting the substitution of a different beneficiary. In reply thereto the association wrote to him, requesting him to fill out the blank on the policy intended for use in designating a change of beneficiaries. Thereafter the assured made no move in the matter. *Held* insufficient to bring about a change of beneficiaries.

3. ———: REDUCTION OF BENEFITS. The declaration of the officers of a mutual insurance company fixing the amount of benefits less than that provided by the contract and by-laws cannot become a part of the contract, unless it was made known to the assured when he became a member, or was legally adopted thereafter.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*Brome & Burnett,* for appellant.

*Jacob Fawcett* and *McIndoe & Thurman, contra.*

EPPERSON, C.

November 14, 1903, defendant, a mutual insurance company, issued to Ray P. Brock the following contract or policy of insurance: "No. 12,792. $5,000. The Western Travelers Accident Association, Omaha, Neb. This certifies that Ray P. Brock is, while in good standing, a member of the Western Travelers Accident Association, and is entitled to all its benefits under the provisions on the back of this certificate, and named in the constitution and by-laws, and subject to the warranties contained in the application for membership. In witness whereof, we have hereunto affixed our official signatures and impressed the corporate seal of the association this 17th day of Nov., A. D. 1903. (Signed) A. L. Sheetz, Secretary. (Corporate seal.) (Signed) E. S. Streeter, President." The provisions upon the back of said contract, which are relevant to the present inquiry, are the following: "Payments will be paid under this certificate for all injuries received through external, violent, and accidental means, and resulting in death, loss of both hands, both feet, or both eyes—$5,000. * * * Membership certificate. The Western Travelers Accident Association, Omaha, Neb. For traveling men. No. 12,792. Issued to Ray P. Brock, Columbus, Kan. Beneficiary, Agnes Brock, wife."

Said Brock, while a member in good standing of the defendant company, and on August 17, 1904, received accidental injuries from which he died the next day. Plaintiff, who was the wife of assured, and was named as beneficiary in the application for membership and in the indorsement made upon the contract, sued for and recovered judgment for the full amount named in said contract of insurance. Defendant admits a liability of $1,000 only under the contract, and further denies the

plaintiff's right to recover any sum, alleging that the son of assured and plaintiff had been substituted as beneficiary. The defendant company operates under the provisions of section 6631 *et seq.*, Ann. St. 1903. Section 6638 provides: "The beneficiary under said certificate shall be the member insured, a husband, wife, relative, dependent, or legatee of such insured member, nor shall any such certificate issued be assigned or willed to any person of a class other than herein designated. Any member of any corporation, association or society operating under this act shall have the right at any time with the consent of such corporation, association, or society to designate a new and different beneficiary without requiring the consent of such beneficiary." The by-laws, adopted by the defendant company, contain the following provision: "The beneficiary under any certificate may be changed upon application of member, in writing, to the secretary." No change was ever made in the certificate of insurance; but on July 25, 1904, the assured addressed a letter to the defendant herein which is as follows: "Gentlemen: Kindly change the beneficiary in my accident policy from Agnes Brock, my wife, to Sam S. Brock, my son, and send policy or notice of change to Eagleville, Mo., care E. E. Moore. Yours truly, (Signed) Ray P. Brock, Columbus, Kansas." Upon receipt of the above letter, and on July 27, 1904, the defendant company, acting through an employee, wrote to the assured as follows: "Mr. Ray P. Brock, Eagleville, Mo., care E. E. Moore. Dear Sir: Your letter of the 25th inst., requesting a change in the beneficiary under your certificate of membership, is received. In reply we would request that you fill up the blank on the back of your certificate provided for this change, and forward to us, when we will indorse the change, and return to you. Yours truly, Western Trav. Accident Ass'n, A. E. T., Cashier." The above correspondence is all the evidence pertaining to the alleged change of the beneficiary. The certificate was found among Brock's papers after his death. Upon the con-

clusion of the trial the defendant requested the court to direct the jury to return a verdict in its favor. This request was refused, and the court's ruling thereon is the first assignment of error presented for our determination.

In the construction of contracts of insurance made by mutual insurance companies it is a well-established rule that the statutes under which the company is organized, its constitution and by-laws, and the application for membership are to be considered as a part of the contract. It is apparent from the reading of the statute above quoted that the change of the beneficiaries is not left entirely with the assured, but the insurance company is concerned in the changing of the beneficiaries, and that it must consent before the change becomes a part of the contract for insurance. It was apparently the intention of the legislature that the assured should have the power in the first instance to name, and thereafter the right to change, the beneficiary of his contract to any one included within the several classes prescribed by the statute, and undoubtedly the insurance company would have no right to refuse to grant a request unequivocally made in accordance with the statute and the rules of the company, so long as such rules are not contrary to or inconsistent with the statute, which in all instances must prevail. Upon reading the statute and the by-laws of the defendant company the conclusion is irresistible that to effectually substitute one beneficiary for another an application must be made therefor by the member in writing, and, if approved by the company, they should consent thereto, and thereby complete a change of the contract by the substitution of a different beneficiary. The association, regardless of the provisions of its by-laws quoted, would have the right to refuse its consent to the substitution of a beneficiary not dependent upon or related to the assured. It would have the right to require the application for change to be sufficiently authenticated that the genuineness thereof should appear reasonably certain. That its consent should be obtained is a reasonable provision, and

necessary for its own protection, for, otherwise, it would probably be subjected to numerous suits by adversary claimants. It is true that a beneficiary has no vested interest in a mutual policy of insurance and is not a party to the contract, and cannot legally prevent a substitution of another. But neither has the substituted beneficiary a vested interest, and a contemplated beneficiary has not even a contingent interest until substituted or named in some contract made by the insurer and the assured. Brock's letter to the company was an application for the substitution of his son instead of his wife as beneficiary. There is no evidence that the defendant ever consented thereto. Its answer to his letter must be taken as a refusal to consent to the change until he should comply with the suggestion there made.

In *Counsman v. Modern Woodmen of America,* 69 Neb. 710, the court had before it an attempted change of the beneficiaries under an insurance policy. The contract in that case, as it was found to exist, provided that "no change in the beneficiary shall be of effect until the delivery of the new certificate, and until then the old certificate shall be held in force." There an application for a change was made in the manner provided, but it was not approved until after the death of the assured. As will be observed from the reading of the opinion in that case, two beneficiaries were named in the certificate. The assured desired to change both. Under the contract or rules of the company one of the changes was prohibited. For that reason the insurance company refused to make any change whatever. The litigation was, in fact, between the parties not affected by the attempted illegal change, but who were interested in the other fund. In the opinion it is said: "The learned trial court seems to have regarded the matter of beneficiary as wholly within the disposal of the assured. We cannot so regard it. It is a matter of agreement between the assured and the association." In *Freund v. Freund,* 75 N. E. 925 (218 Ill. 189), it was held: "A New York statute (laws 1892, p.

2015, ch. 690, sec. 211) requiring the consent of the insurance company to a change of beneficiary by insured becomes a part of a New York policy issued while such statute is in force, and is controlling on the subject covered thereby, although the policy is silent concerning the same." The statute of New York under which the insurance company was organized provided that "membership in any such corporation, association or society shall give to any member thereof the right, at any time, with the consent of such corporation, association or society, to make a change in' his payee or payees, or beneficiary or beneficiaries, without requiring the consent of such payee or beneficiaries." The similarity of this statute with our own is apparent. The contract there involved contained a provision that the assured may, at any time, change the beneficiary by written notice to the company, accompanied by the policy, such change to take effect on the indorsement of the same on the policy by the company. The assured presented the policy to the agents of the company in Chicago, with the written request for the substitution of another beneficiary. This was forwarded by the Chicago agents to the home office of the company, but before the policy with the application for a change had been forwarded by the agents the assured died, without the consent of the company to the change having been procured. In the opinion it is said: "First. It is said by counsel for the appellee that there is nothing in the insurance policy, issued to Josef Freund, which required the consent of the company to the change of the beneficiary. It is true that in the policy itself, which is the contract between the company and the assured, there are no express words requiring the consent of the company; but the statute of the state of New York provides, in substance, that the assured shall have 'the right, at any time, with the consent of such corporation, association or society, to make a change in his payee or payees, or beneficiary or beneficiaries, without requiring the consent of such payee or beneficiaries.' This provision of

the New York statute * * * became a part of the contract, embodied in the policy by implication, with the same effect as if it had been embodied in the policy itself. *Havens v. Germania Fire Ins. Co.*, 123 Mo. 403, 417; *Christian v. Connecticut Mutual Life Ins. Co.*, 143 Mo. 460; *Ritchey v. Home Ins. Co.*, 104 Mo. App. 146. All stipulations of the policy must yield to the statute. *Havens v. Germania Fire Ins. Co., supra.* Inasmuch, therefore, as the provision of the New York statute thus quoted is by implication a part of the policy or contract, this policy is to be regarded as one which requires the consent of the company to the change, the same as though the provision of the statute was written into the policy itself." In *Hall v. Northwestern Endowment & Legacy Ass'n,* 47 Minn. 85, the court had before it a matter which in principle is similar to the case at bar. There the by-laws of the insurance company provided that certificates of membership shall not be transferred, except such transfer shall be allowed by the secretary and noted upon the books of the association. The assured sent his certificate to the company, with a letter, in which, among other things unnecessary to copy, he said: "Inclosed find one of my certificates for change to Nettie Hall, $500; Otto Hall, $500; Temple Lodge, A. F. & A. M., $500." Upon receipt of the communication the secretary of the company returned the certificate to Hall, with a letter calling his attention to the fact that the indorsement providing for change of beneficiaries upon the back of the contract had not been dated nor witnessed, and saying that as soon as it was signed and returned he would attend to it. The assured received this communication and a return of the certificate, but moved no further in the matter. In the opinion it is said: "It is a just inference of fact that he intended to designate the change which he desired to have made by a new certificate to be issued. At least he knew, when the secretary returned the certificate for his proper execution of the indorsed revocation and reappointment, that the other party to the

contract did not claim the substitution of beneficiaries to have been yet effected. He was then advised that if he desired to have the change made he should subscribe the declaration indorsed on the certificate, and return it to the secretary. This he did not do, but retained it without further action. The evidence suggests no reason why he did not comply with the simple direction of the defendant's secretary, if he still desired to carry out his previously expressed purpose. The trial court was justified in inferring that the assured either concluded not to perfect the substitution, or, at least, that he remained undecided whether or not he would do so. In either case, the contract remained in form unchanged, and the substitution was not effectually made."

Brock made no reply to the company's letter requesting a return of the certificate for the purpose of effectually substituting his son as beneficiary. He remained silent. He had the policy in his possession or control. A reasonable inference deducible from this conduct is that he had changed his intentions, and was willing to permit the contract to stand as originally made. Upon the receipt of the defendant's letter he could not reasonably have believed that the consent of the company had been procured, or that he had done all that was required of him to bring about a change. The changing of a contract is a matter of as great importance as the making thereof. The insurer had an interest therein. It is necessary that there should be a meeting of the minds, that both parties thereto should agree before an important change in a contract can be accomplished. That the company itself considered that the change of beneficiaries had not been made is further evidenced by letters written to the plaintiff herein and to her attorneys subsequent to the death of Brock and prior to the institution of this action, in which they were negotiating a settlement, and in which it remained absolutely silent as to the alleged change of beneficiaries. In such correspondence they acknowledged a liability to the plaintiff herein; indeed, they sent to her

a draft for $1,000, which they maintained was the full amount of their liability under the contract. Their silence in this regard at a time when they should speak, although, perhaps not estopping it from denying that a substitution of beneficiaries had been made, indicates clearly that the company itself at the time it wrote these letters considered that it had never consented to the change. Their present contention in this regard was manifest for the first time upon the institution of this suit one year after Brock's death. In *Fisher v. Donovan,* 57 Neb. 361, it was held: "A member holding a certificate in a fraternal beneficiary society may at his option change the beneficiary therein, so long as he complies with the laws of such society, and keeps within its limitations, and those of the statute under which it is organized."

Relative to the changing of beneficiaries under an insurance contract there are decisions holding that when the assured has done all that he is required to do, and all that is in his power, or when, through ignorance or mistake, he fails to do all that he could have done to substitute a new beneficiary, equity will declare the change complete. We find no fault with these decisions. However, they do not state the general rule, but exceptions thereto. The evidence in this case will not permit the application of any exception to the general rule. To support her contention the plaintiff cites *Hirschl v. Clark,* 81 Ia. 200. The benefits under the contract there construed were payable to the wife of the assured, "subject to such future disposal of the benefits as he might thereafter direct." There was no provision in the by-laws or constitution of the insurance company containing any provision whatever relative to the change of beneficiaries. That case we hardly think is in point, as the contract left the disposal of the benefits entirely to the assured. The consent of the association was not required.

At the time the contract in controversy was made Brock was a traveling salesman. Subsequent thereto he also engaged in the occupation of a railway news-agent, which

consumed a part of his time.  He was so employed at the time he received the fatal injury.  Upon the trial of the case defendant offered to prove that the executive board of the defendant, pursuant to authority of their by-laws, during the year 1901 adopted a classification of the occupations considered more hazardous than that stated in the original application for membership, and fixed the benefits to which members should be entitled by reason of such increased hazard; that the classification so made and the resolutions adopting same provided that a railway news-agent was entitled to receive benefits in the event of death by accident in the sum of $1,000 only. Upon objection, this evidence was rejected.  It is the defendant's contention that the classification of risks made by the executive board became a part of the contract. The contract sued on provided for the payment of $5,000 upon the accidental death of the assured.  By the terms of the contract and the assured's application for membership we must consider as a part thereof, not only the acts of the legislature, but the by-laws of the defendant company; and, turning to the by-laws in force when Brock became a member and at the time of his death, we find a provision that, upon the accidental death of any member in good standing, his beneficiary shall receive $5,000.  No exception limiting the amount of recovery to less than $5,000 is made.   But defendant relies upon another section of the by-laws, which is as follows:  "If any member of the association shall, after becoming such, change his occupation to one which the executive board may consider as more hazardous than that stated in his original application for membership, he shall be entitled to such benefits only as may be fixed by the executive board for such increased hazard of his occupation."  It may be doubted that this by-law confers upon the executive board the authority attempted.  This we do not decide, but, instead, for the purposes of this case, consider that the executive board had authority to adopt a reasonable classification of more hazardous risks, and thereby fix the

amount of recovery less than that provided by the certificate. But it is apparent that the classification made by the executive board, to become effectual as a part of the insurance contract, must be made known to the member, that he may be given an opportunity to accept or reject the contract. The classification adopted by the executive board was not one of the by-laws. It was never made known to Brock that the executive board considered the occupation of a railway news-agent more hazardous than that of a traveling salesman. The record of the proceedings of the executive board had been lost for three years prior to the trial of this case, which was begun November 8, 1906. The record was lost about the time of Brock's application for membership, which was dated November 4, and accepted by defendant November 14, 1903. The defendant further offered to prove that there was no other record kept of the proceedings of said board. The secretary of the defendant testified that he had a book which contains the classification as adopted by the executive board, and identified the same, which was offered in evidence by the defendant, but which, upon objection, was rejected. There is absolutely no evidence in the record, and none offered, that the deceased ever knew of the action of the executive board, nor that the classification of hazardous risks was ever known to him, nor that the book containing such classification offered in evidence was in existence at the time Brock became a member, nor that the classification was published as a part of the advertising matter of the defendant, nor was the same referred to or expressly made a part of the contract. It is not competent for an insurance company to make a secret classification of risks or other rule prejudicial to the rights of the assured. The evidence offered would not have proved that the classification of risks by the executive board ever became a part of the contract. The declaration of the officers of a mutual insurance company fixing the amount of benefits less than that provided by the contract

25

and by the by-laws is not a part of the contract, unless it was made known to the assured at the time he became a member.

·Defendant now contends that there was error in the admission of the letters, above referred to, by the defendant to the plaintiff and her attorneys. We do not, however, consider this assignment of error, for the reason that the bill of exceptions shows their admission in evidence without objection.

The court properly excluded the evidence offered, and we recommend that the judgment of the district court be affirmed.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.