OMAHA PUBLIC POWER DISTRICT, A PUBLIC CORPORATION, APPELLANT, V. THE TRAVELERS INDEMNITY COMPANY, A FOREIGN CORPORATION, APPELLEE.

135 N. W. 2d 1

Filed May 7, 1965.  No. 35813.

Haney, Walsh & Wall, for appellant.

Cassem, Tierney, Adams & Henatsch and Charles F. Gotsch, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, and McCOWN, JJ.

BOSLAUGH, J.

This is an action upon a boiler and machinery insurance policy issued by The Travelers Indemnity Company, the defendant, to the Omaha Public Power District, the plaintiff. The jury returned a verdict for the defendant. The plaintiff's motion for judgment notwithstanding the verdict or for a new trial was overruled and it has appealed.

On July 4, 1959, a transformer owned by the plaintiff was damaged as the result of an accidental internal electrical disturbance. The cost of repairing the damage to the transformer amounted to $146,964.85. During the time that the transformer was out of service, the plaintiff temporarily installed two smaller transformers so that the generating unit ordinarily connected to the damaged transformer could be used for the production

of electricity. The expense of the temporary installation amounted to $19,779.86. The defendant paid one-half of these amounts to the plaintiff and asserted that the plaintiff's fire insurance carriers were liable for the remaining one-half because the loss was a "joint loss" within the meaning of the applicable policies.

The action was brought to recover the remaining one-half of the loss from the defendant. Although the action was brought in the name of the plaintiff, the record shows that the fire insurance carriers had paid one-half of the loss to the plaintiff and had taken loan receipts pursuant to an agreement that this action would be brought at their expense to determine the extent of the defendant's liability under its policy.

The defendant's policy also provided coverage for loss of capacity and extra expense. The claim under this coverage amounted to $49,468.62 and was paid in full to the plaintiff. There is no issue concerning it in this litigation.

All of the plaintiff's fire insurance policies which were in force at the time of the accident contained extended coverage endorsements which insured the plaintiff against loss by explosion. The endorsements provided: "The coverage of loss by explosion under this endorsement shall include direct loss by any artificial electrical disturbance immediately preceding and causing such explosion * * *." They further provided: "The following are not explosions within the intent or meaning of these provisions: * * * (b) electrical arcing, * * *." The controlling issue in this case is whether the damage to the plaintiff's transformer was caused by an explosion within the meaning of the extended coverage endorsement of the fire insurance policies.

The plaintiff's transformer which was damaged on July 4, 1959, is a General Electric 133,000 KVA power transformer. It is approximately 8 feet wide, 17 feet long, and 12 feet high and contains three large coils which are submerged in insulating oil when the trans-

former is in operation. The space between the surface of the oil and the top of the transformer is filled with nitrogen gas under pressure. The transformer is designed to operate normally with a nitrogen gas pressure of between 1½ to 7½ pounds per square inch. The transformer is equipped with a pressure relief device which is designed to relieve the gas pressure in the transformer whenever it exceeds 15 pounds per square inch.

The examination and inspection of the transformer which was made after its failure disclosed that an electrical arc or "flashover" had occurred within the transformer. The arc traveled approximately 3 feet from coil B to coil C, created a very high temperature in the oil, and transformed some of the oil into gas and carbon. The resulting increase in gas pressure which occurred within a fraction of a second damaged the internal parts of the transformer and caused the pressure relief device to operate.

The pressure relief device is a curved pipe or elbow fastened to the top of the transformer. The end of the pipe is sealed with a "herkolite" diaphragm and is equipped with a hinged door which covers the diaphragm. The diaphragm is designed so that it will rupture when the gas pressure inside the transformer exceeds 15 pounds per square inch. The door covering the diaphragm is fastened with a bolt or screw that is designed to break when gas pressure against the door exceeds 15 pounds per square inch. The door is equipped with a spring so that it will close after the excessive gas pressure within the transformer has been relieved.

When the pressure relief device functioned on July 4, 1959, the diaphragm was ruptured, the bolt was broken, and one of the hinges attached to the door was broken. Oil from the transformer was thrown horizontally against the wall of a building approximately 15 feet away.

Inside the transformer in the area where the arcing

occurred there was evidence of scorching, and the insulation on the windings of the coils was damaged. A phase barrier and some of the oil diffusors were displaced, several fiber bolts were broken, and two of the high voltage bushings were displaced. The oil in the transformer was badly carbonized and carbon particles were distributed throughout the transformer. It was necessary to return the transformer to the factory in Massachusetts for repair.

There is no controversy between the parties in this case as to the facts. The evidence, although in part circumstantial and in part expert testimony, is undisputed. The controversy in this case concerns the legal effect or consequences of what happened at the time of the transformer failure.

The decision in this case turns upon the construction and interpretation of the fire policies. The construction of a written contract is ordinarily a question of law. Mecham v. Colby, 156 Neb. 386, 56 N. W. 2d 299. As we view the record, it is a question of law as to whether any part of the plaintiff's loss was within the coverage of its fire policies.

The fire policies insured against loss by explosion. In construing an insurance contract, the words used therein should be considered as used in their ordinary and popular sense. Wilson v. Capital Fire Ins. Co., 136 Neb. 435, 286 N. W. 331. We think that the term "explosion" as used in the policies involved in this case means a violent bursting or expansion following the production of pressure or a sudden release of pressure. Baltimore Gas & Electric Co. v. United States Fidelity & Guaranty Co., 269 F. 2d 138. See, also, 15A Words & Phrases, Explosion (Perm. Ed.), p. 479; 29A Am. Jur., Insurance, § 1296, p. 421; Annotation, 28 A. L. R. 2d 995.

The evidence in this case shows a violent bursting following the production of pressure as the result of an electrical arc occurring within the insulating oil in the transformer. Although an electrical arc alone is not

an explosion, an explosion caused by an electrical arc is within the extended coverage of the fire policies, and their coverage extends to the damage resulting from the arc if it immediately precedes and causes the explosion. Baltimore Gas & Electric Co. v. United States Fidelity & Guaranty Co., *supra*. The damage to the transformer was a "joint loss" within the meaning of the applicable policies, and the defendant's liability as to that item of the loss did not exceed one-half of the cost of repairing the damage.

The loss of capacity and extra expense coverage endorsement of the defendant's policy contained a provision that the defendant would pay any extra expense incurred by the assured at the written direction of the defendant to reduce or avert any loss of capacity. The defendant gave written authorization for the temporary installation of the smaller transformers and it paid one-half of this expense.

The defendant contends that the extra expense incurred by the plaintiff was a "joint loss" and that four of the fire companies are liable for one-half of this expense. Four of the fire insurance policies issued to the plaintiff contain an endorsement which provides coverage for loss resulting from business interruption. The endorsement provides that the policy shall also cover such expenses as are necessarily incurred for the purpose of reducing any loss under the policy not exceeding the amount by which the loss under the policy is thereby reduced. If the expense of the temporary installation of the smaller transformers reduced the loss under the business interruption coverage provided by the fire companies, then this expense was a "joint loss" and the defendant's liability as to that item of the loss does not exceed one-half of the expense.

The business interruption coverage provided by the fire policies was limited to the actual loss sustained by the plaintiff "not exceeding the reduction in gross earnings less charges and expenses which do not necessarily

continue during the interruption of business." The plaintiff contends that the evidence does not show the amount of any reduction in gross earnings sustained by the plaintiff as a result of the transformer failure and does not show that the temporary installation of the smaller transformer resulted in a reduction of a loss under the business interruption coverage. The plaintiff argues that in the absence of such evidence the defendant should be held liable for the full amount.

By this argument the plaintiff attempts to assert a defense that could properly be made only by the fire companies against the plaintiff. In effect, the plaintiff is asking the defendant to prove the items that the plaintiff was required to establish in its proofs of loss to the fire carriers. The fire companies concerned have paid the plaintiff one-half of the expense of the temporary installation of the smaller transformers. There is nothing in the record which indicates that there has ever been any controversy between any of the parties concerned as to whether the plaintiff sustained a reduction in gross earnings as a result of the transformer failure or whether the temporary installation of the smaller transformers was effective to avoid a reduction in gross earnings.

As we interpret the record, the plaintiff's contention in the trial court was that the defendant was liable for the entire loss because the accident was not an "explosion" within the meaning of the extended coverage of the fire policies; that the defendant was estopped from asserting that the loss was a joint loss; and that the plaintiff had failed to notify the fire companies of the loss as required by their policies. The loan receipts recite that the plaintiff had made demand upon the fire companies. The plaintiff cannot now attempt to raise an issue against the defendant upon the theory that it did not sustain a loss and that there was no basis for the claim which it asserted against the fire carriers under the business interruption coverage.

The plaintiff's contention in regard to estoppel is based upon the theory that the defendant's conduct prevented it from giving notice of the loss to the fire companies within the time required by their policies. The record shows that the fire companies did receive notice within the time required and that there has been no prejudice to the plaintiff as a result of the defendant's conduct. There is no merit to the plaintiff's contentions that the fire companies were not timely notified of the loss or that the defendant was estopped from asserting that the loss was a joint loss.

It is unnecessary to consider the other assignments of error relating to alleged errors in the admission of evidence and the instructions to the jury.

The judgment of the district court is affirmed.

AFFIRMED.