INLAND DRILLING COMPANY, A CORPORATION, APPELLEE AND CROSS-APPELLANT, v. DAVIS OIL COMPANY, A PARTNERSHIP, ET AL., APPELLANTS AND CROSS-APPELLEES.

158 N. W. 2d 536

Filed April 26, 1968. No. 36823.

Clarence A. Davis, for appellants.

Van Steenburg, Myers & Burke, Thomas D. Smart, and Ernest S. Baker, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

NEWTON, J.

This is an action brought by Inland Drilling Company, a corporation, plaintiff, against Davis Oil Company, a partnership and the individual partners, defendants, for the purpose of recovering on a contract to drill an oil well. This was a law action tried to a jury. After all of the evidence in the case had been adduced and the parties had rested, each of them moved for a directed verdict whereupon the trial court, without objection, dismissed the jury and took the case under advisement. Trial was completed on May 19, 1964, but judgment was not entered therein until April 12, 1967, at which time the court found that there was due plaintiff $55,045.08, with interest thereon at the rate of 6 percent per annum from June 1, 1961, to the date of judgment. The interest amounted to $19,357.71 and judgment was entered for the plaintiff in the total amount of $74,402.79. Defendants appeal.

The contract provided for the drilling of an oil well by

plaintiff for defendants at a specified location in the State of Wyoming. Defendants agreed to procure all third party services and materials not specifically to be furnished by the plaintiff. Plaintiff was to supply a rotary drilling rig, including blowout preventer, and all other machinery, tools, equipment, materials, services, and labor necessary except such as was to be supplied by defendants. The hole was to be 7⅞ inches in diameter and drilled to a depth of 8,000 feet or through the Second Frontier formation, whichever was lesser. Plaintiff was to be paid $8.50 per foot drilled and in addition thereto, the sum of $950 per day while drill stem was in use and $850 per day when drill stem was not in use. Plaintiff was to furnish water amounting up to $2,000 and in excess of that figure, the water was to be furnished by defendants. Defendants were also to furnish the drilling mud and trucking, and crude oil for mud, together with drill bits and other items. The contract contained the following clause: "C. *LOST CIRCULATION CLAUSE:* Should abnormal pressures be encountered, or should a cavity or other formations preventing the maintenance of circulation be encountered for an accumulative period of more than Twenty-four (24) hours during the drilling of this well, operations shall thereupon be on a day work basis until the difficulty is overcome or the hole is lost or abandoned, provided that Contractor notifies Owner promptly upon encountering such difficulty."

Actual drilling of the well commenced on September 23, 1960, and ceased on November 17, 1960, at which time the well had been drilled to a depth of 2,407 feet and plaintiff was informed by defendants' representatives that the drilling was to be stopped and that the well was to be plugged. The evidence indicates that in drilling a well with a rotary drill, mud must be constantly pumped down the center of the casing connected with the drill where it is forced out under pressure for the purpose of lubricating the drill. The mud, together with

the debris loosened by the drill, is then sucked back up on the outside of the casing, cleaned and reused resulting in a continuous circulation of the mud. The mud itself is a special-type preparation of a rather expensive nature ordinarily mixed with water or oil. It is not uncommon to lose the circulation if cavities or other difficulties are encountered beneath the surface. In the present instance, circulation problems were encountered almost from the start and became serious at a depth of 69 feet. This was called to defendants' attention and because circulation was not being regained, defendants made arrangements for another drilling rig to come in and take over temporarily. This rig was what was referred to as a "spudder." It drilled by means of percussion or hammering and did not require mud for its operation. This rig drilled to a depth of 142 feet, was then removed, and plaintiff resumed operations. At that point, circulation had been regained and although other circulation problems were encountered from time to time, plaintiff drilled to the 2,407-foot depth where work was stopped.

The record quite clearly reflects the foregoing facts, but any slight conflict in the evidence must be resolved in favor of plaintiff. "In testing the sufficiency of the evidence to support a judgment, the evidence must be considered in the light most favorable to the successful party." Lundt v. Parsons Constr. Co., 181 Neb. 609, 150 N. W. 2d 108.

The assignments of error set out by defendants contain three propositions. First, that plaintiff was not entitled to be paid while the spudder or percussion drill was operating; second, that plaintiff was obligated to pay for the use of the spudder; and third, that the court erred in allowing interest.

In regard to the question of payment while the spudder was in operation, it appears that the contract provided that when circulation of the mud was lost, defendants were to pay plaintiff on a day-work basis after circula-

tion had been lost for an accumulative period of more than 24 hours. This provision appears to clearly cover the situation presented. The spudder was brought in because of lost circulation, and after the first 24 hours, plaintiff was entitled to be paid on a day-work basis or, in other words, at the daily rate provided while the drill stem was not in use.

Regarding payment for the use of the spudder, the contract provided that the defendants shall "* * * procure all third party services and materials used in the testing, completion, or equipping of the test well which are not specifically furnished * * *" by plaintiff. Nowhere in the contract is the plaintiff obligated to furnish any type of drilling rig except the rotary rig which it did furnish. Defendants do not deny that they made all arrangements for bringing in the spudder. Attention is also called to a further provision in the contract which provided that if plaintiff was unable to complete the contract, defendants could then take over, use the plaintiff's equipment free of cost, and continue the drilling, or could remove such equipment and employ another contractor to continue the work at plaintiff's expense. This provision became operative only in the event plaintiff ceased work for a period of 5 days. There is no contention on the part of defendants that plaintiff ever ceased work or became subject to this provision.

No ambiguities appear in this contract. "A written contract expressed in unambiguous language is not subject to interpretation or construction and the intention of the parties to such a contract must be determined from its contents." Mid States Engineering v. Rohde, 182 Neb. 590, 156 N. W. 2d 149. In the event any ambiguity could conceivably be attributable to this contract, attention is called to the fact that the contract was prepared by defendants. "Language used in a contract prepared by one of the parties thereto, which is susceptible to more than one construction, should receive such a construction as the party preparing the same at the time

supposed the other party would give to it, or such a construction as the other party would be fairly justified in giving to it." Podewitz v. Gering Nat. Bank, 171 Neb. 380, 106 N. W. 2d 497.

Defendants' third assignment of error wherein it is contended that interest on the judgment should not have been allowed appears to be meritorious. On November 30, 1960, plaintiff presented defendants with a statement amounting to $76,973.03. This was the amount prayed for in plaintiff's original petition. In its amended petition, plaintiff prayed for judgment in the amount of $82,301.32. Defendants offered $29,368 and the trial court found that there was actually due plaintiff the sum of $55,045.08. It is readily apparent that this was not a liquidated claim which was fixed and determined or readily determinable, but was, in fact, the subject of reasonable controversy and incapable of being fixed by computation. In the present case, the question of interest is magnified entirely out of proportion due to the fact that the trial court retained this matter under advisement for a period of almost 3 years, a practice which must be disapproved. Under the existing circumstances, plaintiff is entitled to interest only from the date of the judgment entered on April 12, 1967. "Recovery of interest on an unliquidated claim, the subject of reasonable controversy and incapable of being fixed by computation, may be had only from the date of determination of the right of recovery and the ascertainment of the amount." Lundt v. Parsons Constr. Co., *supra*.

Plaintiff has cross-appealed and assigns as error the action of the trial court in finding the amount due plaintiff on a footage basis. The contract provided that, in addition to day rates, defendants were to pay plaintiff $8.50 per foot drilled. It was stipulated that the well was drilled to a depth of 2,407 feet and the undisputed evidence shows that this drilling was done entirely by plaintiff with the exception of the distance from the 69-foot depth to 142 feet. The trial court found that

plaintiff was entitled to payment for 1,833 feet or the sum of $15,580.50 therefor. On the undisputed evidence in this case, plaintiff was entitled to be paid for 2,334 feet and to the additional sum of $4,258.50. Plaintiff is, therefore, entitled to judgment in the sum of $59,303.58, with interest thereon at 6 percent per annum from April 12, 1967, and costs.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED.