ARDEN J. WESTBROOK, APPELLEE, v. MASONIC MANOR, A NEBRASKA CORPORATION, APPELLANT.

178 N. W. 2d 280

Filed June 19, 1970. No. 37509.

Crossman, Barton & Norris, for appellant.

Krause, Inserra, Petersen & Burkhard, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

BOSLAUGH, J.

This appeal involves the interpretation of a residency contract between the plaintiff and the defendant. At the close of the evidence the trial court directed a verdict for the plaintiff. The defendant has appealed.

In 1964 the plaintiff entered into a residency contract for a one-bedroom apartment in the apartment building operated by the defendant in Omaha, Nebraska. The contract provided that upon payment of an entrance fee of $5,000 the plaintiff was entitled to live in an assigned apartment for life, subject to the monthly payment of "a proportionate share of expenses, maintenance and amortization of loan," and subject to "the rules and regulations which will be adopted to govern the Manor." The right to live in the apartment was not assignable.

The contract further provided that "upon relinquishment of the apartment provided for herein and upon written demand of applicant * * *, ninety per cent of any payment on entrance fees is refundable as soon as the Masonic Manor secures another applicant for the apartment being released."

The plaintiff paid the entrance fee and moved into the apartment in 1964. On March 1, 1967, the plaintiff notified the defendant that the apartment would be vacated April 1, 1967, and demanded a refund of 90

percent of the entrance fee paid. The apartment was "resold" on September 15, 1968. The controversy is whether the plaintiff is liable for the monthly maintenance fees after he relinquished the apartment and before it was resold.

On March 19, 1967, after the plaintiff had notified the defendant that the apartment would be relinquished but before it had been vacated, the defendant's board of directors adopted a resolution providing that owners of resident tenancy contracts would be responsible for the monthly prorata payment whether the apartment was occupied or not. The directors also provided that a bulletin be sent to each tenant setting forth the action of the board and stating that a new contract was being prepared.

The entrance fee on the plaintiff's apartment was increased to $6,000 on October 1, 1965. The monthly maintenance fees were increased twice during the time that the plaintiff occupied the apartment. The plaintiff paid the monthly maintenance fees during the time that he occupied the apartment but the record does not show that he paid the increase in the entrance fee or that he was asked to do so by the defendant.

The plaintiff contends that he is entitled to $4,500 which is 90 percent of the entrance fee paid. The defendant contends that the plaintiff should receive 90 percent of $6,000 less $3,001.25 for the monthly maintenance fees charged between April 1, 1967, and September 15, 1968. The plaintiff recovered judgment for $4,500 in the trial court.

The construction of a written contract is ordinarily a question of law. Omaha Public Power Dist. v. Traveler's Indemnity Co., 178 Neb. 709, 135 N. W. 2d 1. In construing a contract, the entire instrument must be considered and the words used given their ordinary and popularly accepted meaning. Long v. Magnolia Petroleum Co., 166 Neb. 410, 89 N. W. 2d 245.

The defendant argues that the plaintiff was liable for

the monthly maintenance fees until the apartment was resold because the plaintiff was entitled to live in the apartment during this time. The argument disregards the provision requiring relinquishment. Before the plaintiff was entitled to a refund of the entrance fee, he was required to relinquish the apartment and a new applicant was to be secured. The relinquishment was a surrender of the right to live in the apartment, and the plaintiff should not be liable for the monthly maintenance fees thereafter.

It is apparent that, prior to March 19, 1967, the defendant did not consider the owner of a residency contract liable for payment of the monthly maintenance fees if the apartment was not occupied. The interpretation given a contract by the parties themselves while engaged in the performance of it is one of the best indications of the true intent of the contract. Ordinarily, such a construction of the contract should be enforced. Lortscher v. Winchell, 178 Neb. 302, 133 N. W. 2d 448.

The action of the defendant's board on March 19, 1967, was a modification of the contract which was not binding on the plaintiff without his consent. It was a modification that could not be effected by a rule or regulation solely within the control of the defendant. See Urick v. Western Travelers Accident Assn., 81 Neb. 327, 116 N. W. 48.

The judgment of the district court is correct and it is affirmed.

AFFIRMED.

WHITE, C. J., dissenting.

I cannot agree with the majority opinion's disposition of this case, which, in purporting to give effect to a rule of construction, substantially alters the basic agreement of the parties. The rule relied upon is predicated upon an ambiguity in the contract. I submit that the contract is not ambiguous and is in no need of judicial interpretation.

Under the terms of the contract, plaintiff was entitled

to live in the apartment after having paid an initial entrance fee of $5,000, subject to a monthly payment of a proportionate share of the expenses. To "entitle to" means to give a right to something, or to qualify for that right. 14A Words and Phrases (Perm. Ed.), p. 389 (1952). The majority opinion asserts that by relinquishing his apartment, plaintiff surrendered his right to live in that apartment; therefore, he should not be required to pay the monthly maintenance fees after surrendering that right. This line of reasoning flies in the face of the fundamental principle of mutuality. Surrender of the apartment did not terminate plaintiff's rights to that apartment under the terms of the contract; it merely meant that plaintiff would be entitled to a ninety percent refund of any payment on entrance fees, as soon as another applicant was secured for the released apartment. The refund clause is not concerned with the controlling issue in this case, that is, when did the plaintiff's right to the apartment, and corresponding obligation to pay the monthly fees, terminate? I submit that plaintiff had the obligation to pay the monthly fees as long as he was entitled to the apartment, or as long as he had a right to live in the apartment. That right terminated when the apartment was sold and transferred to a prospective resident. Plaintiff himself chose not to remain in the Manor even though he was entitled to do so under the express terms of the contract. If plaintiff was allowed to terminate his residence and thereby terminate his concomitant obligations as of that time, more than the principle of mutuality has been undermined. The security for the amortization of the substantial loan involved in a mutual rental scheme such as that present in this case, does not permit a unilateral or whimsical termination of the rental payments by one of the tenants. To allow this arbitrary termination would destroy the security of such a scheme, subjecting the remaining tenants to the increasing burden of continuing on without the necessary funds. Such action

on the part of a few tenants could create a momentum that would be destructive of the whole scheme. While not legally determinative of the issues, these observations clearly demonstrate the reasonableness of the terms of the contract under these circumstances. The purpose of the contract is to preserve the interim continuity of the payments, a condition consistent with the taxes, maintenance, and amortization requirements and other burdens of tenancy and ownership.

It is hornbook law that in construing a written contract for the purpose of ascertaining the intention of the parties, the instrument must be considered as a whole, and the intent of the parties must be derived from the four corners of the instrument. See, Mills v. Aetna Ins. Co., 168 Neb. 612, 96 N. W. 2d 721 (1959); Mid States Engineering v. Rohde, 182 Neb. 590, 156 N. W. 2d 149 (1968); Inland Drilling Co. v. Davis Oil Co., 183 Neb. 116, 158 N. W. 2d 536 (1968). A corollary rule is that in construing a contract, the court must give meaning to all of its parts, and any interpretation which renders meaningless any part of the contract must be avoided. The reason is self-evident: If a particular construction renders part of a contract meaningless, it is indicative that the construction is not in accord with the parties' intentions. Beister v. John Hancock Mut. Life Ins. Co., 356 F. 2d 634 (8th Cir., 1966). The majority opinion focuses upon the refund clause of this contract to justify its decision without considering the meaning of the clause which, in my view, is determinative of this case, thereby violating the rule set out above.

It is not within the province, function, or duty of the court to alter, revise, or modify any contract by construction, or to make a new or different contract from that for which the parties bargained, regardless of whether the result superficially seems to be harsh. The court's duty is confined to the construction of the contract the parties have made for themselves. Preferred

Risk Mut. Ins. Co. v. Continental Ins. Co., 172 Neb. 179, 109 N. W. 2d 126 (1961); Richardson v. Waterite Co., 169 Neb. 263, 99 N. W. 2d 265 (1959). Principles of contract construction cannot be applied to vary the meaning of that which is otherwise clear and unambiguous. The rule of Lortscher v. Winchell, 178 Neb. 302, 133 N. W. 2d 448 (1965), is a sound, viable rule of construction when applied in an appropriate case. But that rule is based upon the assumption that there is some predicate for its use, viz, some ambiguity or uncertainty in the contract. If indeed there is no ambiguity, there is no need for construction, and hence no need to apply the rule.

To be ambiguous the meaning of the contract must be obscure, or doubtful, incapable of ascertainment within the four corners of the instrument. 3 Words and Phrases (Perm. Ed.), p. 440 (1953). Ambiguity should not be created or determined by the use of hindsight, nor after the lawsuit has commenced and the parties have taken polarized positions with respect to their construction of the contract. Whether the terms of the contract could have been more clearly expressed cannot be solely determinative of the question of ambiguity; a contract must be read as a whole and the meaning therein ascertained from the face of the instrument. It seems clear that the meaning of the contract *is* capable of ascertainment within the four corners of the contract in this case. It is patently obvious that resort to extraneous factors is not justified in this case, that the meaning must be deduced from the contract itself, and that the rule of Lortscher v. Winchell, *supra*, is not applicable.

The majority opinion equates surrender of the premises with termination of the monthly payments. This follows, says the majority opinion, because of the rule of Lortscher relating to contemporary interpretations of a contract by acts of the parties. As stated earlier, however, that rule is inapplicable where the language of the contract is not ambiguous. Even assuming ambigu-

ity in the contract, I still cannot agree with the majority opinion. The decision assumes that prior to March 19, 1967, the Manor did not consider plaintiff liable for payment of monthly maintenance fees after having surrendered the apartment. This is a *plausible* assumption only. It is also possible that the action was taken as an attempt to make explicitly clear that which was already inherent in the contract, so that no questions could be raised. Even if the majority opinion is correct in its assumption, it still does not justify application of the rule of Lortscher in this case. Before the rule that contemporary interpretation of a contract by acts of the parties is entitled to great or controlling weight applies, it should appear that they were acts of *both* parties, done with knowledge and in view of a purpose at least consistent with that to which they are sought to be applied. 17 Am. Jur. 2d, Contracts, § 274, p. 687 (1964). Lortscher involved a series of mutual interpretations between the parties in terms of their actions and subsequent agreements, rather than a unilateral act or interpretation as in this case. Mutuality of interpretation, the foundation for the Lortscher rule, is conspicuously absent, with the result that the rule has been severely broadened.

In this case the majority opinion balloons a single unilateral act during the course of performance into a rewriting of the original contract. I fell strongly that no rule of construction should be used to affirmatively destroy the express written provision of a contract. Conduct during the course of performance, unless it constitutes a modification for a consideration, should never apply to action on a single occasion or to action of one party only. Self-serving conduct is not entitled to weight one way or another.

The conduct of the defendant here must be weighed in light of the terms of the agreement and the possible meanings of its conduct. Is the defendant to be penalized because of the security action it took to prevent

further disputes of this nature? Can it reasonably be said that the further strengthening of an already clear contract creats ambiguity?

I point out that we are not dealing here with an executory contract with repeated occasions of performance by the parties. Nor are we dealing here with any course of performance accepted by or acquiesced in without objection by the other party. The rules relating to interpretation by a course of performance relate to an entirely different situation than is present in this case. I submit that the express terms of a contract should receive preferential if not conclusive treatment in the interpretation of the contract unless there is ambiguity. I submit that the purported expansion of the rule in Lortscher v. Winchell, *supra,* leaves the door open for this court to rewrite contracts. It would further appear that the security of a party in his reliance on the clear and express terms of a contract can only be preserved by rigid requirement of performance.

It is my opinion that the judgment of the district court should be reversed.