FLOYD LOCKHART, APPELLEE, V. CONTINENTAL CHEESE, INC., A NEBRASKA CORPORATION, AND LAWRENCE SYSTEMS, INC., AND DONALD P. PAULY, APPELLANTS.

278 N. W. 2d 604

Filed May 8, 1979. No. 42176.

Phillips & Garwood, for appellants.

William H. Stowell and Jerry McDole, for appellee.

Heard before KRIVOSHA, C. J., WHITE, and HASTINGS, JJ., and REIMER and HIPPE, District Judges.

HIPPE, District Judge.

This is an appeal from a judgment of $10,488.84 for plaintiff-appellee upon a jury verdict, and subsequent overruling of an alternative motion filed by defendants-appellants, for judgment notwithstanding the verdict or for a new trial.

The appellee was employed by appellant, Continental Cheese, Inc., a Nebraska corporation, as general manager of a cheese manufacturing plant in Red Cloud, Nebraska, in about 1966. In July 1967 he also became an assistant to the accounts receivable manager of appellant Lawrence in order to facilitate Lawrence in guaranteeing to lenders of Continental that reported inventories in the plant operations were accurate. For a time, portions of the appellee's salary were paid by both Continental and Lawrence. Appellant, Donald P. Pauly, was president and major stockholder of Continental plus

other corporations that deal generally in the manu-
facture and sale of cheese. Much of the office func-
tions and bookkeeping of Continental was directed
from Manitowoc, Wisconsin, by Don Pauly and his
office manager, Lyle Bauer.

On December 16, 1971, Don Pauly's letter to the
appellee stated, in discussing other matters relating
to the Red Cloud plant, that: "I also feel the time
has come that you should participate in the profits
we hope to produce. We will set-up a basis of 10% of
the gross profit, before taxes, as a bonus." There-
after appellee was paid a weekly salary plus an
annual bonus check until July 2, 1976, at which time
Don Pauly terminated his employment by closing
the Red Cloud plant.

In this case, the appellee alleged he worked but
was unpaid for the week of July 3-10, 1976, and had 3
weeks of vacation pay coming, all at $250 per week;
and that the bonus paid since 1971 was $9,738.34 short
of 10 percent of the gross profit for the same period.
The appellants' contention, on the other hand, was
that the appellee did not perform substantial serv-
ices during the week of July 3-10, 1976; that the vaca-
tion period was 2 weeks instead of 3 and had been
used up by short periods from time to time on other
business interests; and that the bonus should be 10
percent of the taxable income reported on the corpo-
rate income tax return after adjustments which re-
sulted in a bonus overpayment of $1,659.59 rather
than an underpayment. Both parties agreed that
appellee's weekly pay was $250 in June 1976, and
that a total of $6,996.68 was paid to appellee as a
bonus.

The record shows no motion for a directed verdict
made on behalf of the appellants at the conclusion of
the appellee's case or at both parties' rest. Instruc-
tions of the court submitting to the jury separate is-
sues of the July 3-10 pay, vacation pay, and the
bonus were not objected to at the instruction confer-

ence. The verdict of the jury equals 3 of the 4 weeks of pay claimed by appellee plus the claim for an underpayment of the bonus.

On this appeal, the appellants assign two errors by the trial judge. These errors illustrate an application of the rules pertaining to the making of trial motions. It should be remembered that a motion for a directed verdict precludes a jury from deciding a case; a motion for judgment notwithstanding the verdict assumes the jury has decided the case but judgment is rendered otherwise in spite of that; and a motion for a new trial assumes that the jury has decided the case but it must be tried all over because a statutory ground shows that a party did get a trial, but it was not a fair trial. Each of the procedures has a different history and purpose but all have a common characteristic of precluding the trier of fact from exercising final judgment in deciding the case because of rulings of law.

First assigned is an error in overruling the appellants' motion for a directed verdict at the conclusion of the appellee's evidence. The record, however, shows that no such motion was made after the court inquired if there were any motions to make. The same inquiry as to the making of motions was made at the conclusion of both parties' evidence and no motion for directed verdict was made by the appellants either time. Since no motion was made, the assignment of error in overruling such a motion is clearly without merit.

The second assignment of error is the trial court's order overruling appellants' alternative motion for judgment notwithstanding the verdict or for a new trial, from which this appeal was timely taken.

As to the motion for judgment notwithstanding the verdict, the absence of a motion for a directed verdict precludes the granting of such judgment. The statute authorizing such a procedure is section 25-1315.02, R. R. S. 1943, and provides: ''* * * Within

ten days after the reception of a verdict, a party *who has moved for a directed verdict* may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; * * *." (Emphasis supplied.)

Construing this provision In re Estate of Kinsey, 152 Neb. 95, 40 N. W. 2d 526, this court held that a motion for a directed verdict is an absolute prerequisite to a motion for judgment notwithstanding the verdict. This is so because the statute provides a way whereby the trial court can overrule a motion for a directed verdict made during trial, conclude all the evidence, receive the verdict, and still set aside the verdict later and conclude the litigation by final judgment if the evidence was legally insufficient to support the verdict. Prior to the adoption of this procedure — largely a copy of the then Federal Rule 50 — the court could only provide for a new trial, with its attendant delay and expense, in order to correct results insufficiently supported by evidence. See, Simmons, "Directed Verdicts Under Federal Civil Procedure Rule 50 and Under Sections 25-1315.01 to 25-1315.03 of the Nebraska Revised Statutes", 30 Neb. L. Rev. 630; and Department of Banking v. Colburn, 188 Neb. 500, 198 N. W. 2d 69. Thus we conclude that the trial court did not err but ruled correctly in overruling the appellants' request for judgment notwithstanding the verdict of the jury, finding for the appellee, because no motion for a directed verdict was made.

Ruling upon this assignment, however, does not dispose of the issues on appeal, because a party aggrieved by a verdict may move for a new trial upon the grounds that the verdict is "not sustained by sufficient evidence, or is contrary to law" as provided in section 25-1142, R. R. S. 1943, and the trial court has the power and authority to grant a new trial where such legal cause or reason therefor ap-

pears in the record and timely appropriate motions for a new trial have been filed, notwithstanding the fact that no preliminary motion for a directed verdict has been made. In re Estate of Kinsey, *supra*. Thus, the failure to make a motion for a directed verdict does not preclude our review of the overruling of a motion for a new trial on the grounds of insufficiency of evidence.

In determining the sufficiency of the evidence to sustain a verdict, the evidence must be considered most favorably to the successful party, every controverted fact must be resolved in his favor, and he is entitled to the benefit of any inferences reasonably deducible from it. A jury verdict based on conflicting evidence should not be set aside on appeal unless clearly wrong. National Bank of Commerce Trust and Sav. Assn. v. Katleman, 201 Neb. 165, 266 N. W. 2d 736; First Mid America, Inc. v. Palmer, 197 Neb. 224, 248 N. W. 2d 30; Department of Banking v. Colburn, *supra*.

An application of these principles to a careful study of the evidence in the case shows there were only three fact issues submitted to the jury. On the first, appellee testified he worked full days the week of July 3-10, 1976, and explained at length the duties he performed and jobs he accomplished. These consisted of cleanup duties at the plant, arranging for delivery of final checks to milk producers, and generally setting up the plant for a change of management or for closing of the plant altogether. These acts culminated in delivering the keys of the plant on the premises to Don Pauly, his employer, on July 10, 1976. The only contradiction was the testimony of Don Pauly that he believed the tasks could have been performed more quickly.

On the vacation issue the appellee did show that company policy was to grant 2 weeks of vacation pay to terminated employees, that other employees received such pay after their termination by the

closing of the plant in July 1976, with the notable exception of the appellee, and that he did not take any of his vacation time in pursuing other business interests. This evidence was contradicted by the appellants with evidence that, when called at the plant, the appellee was frequently gone or unavailable, and that he was also manager of a local race track.

As to the bonus, the appellee offered evidence in the form of profit and loss worksheets prepared by Lyle Bauer, Continental's office manager, after they were requested and produced following a discovery deposition of that witness prior to trial. They showed the gross profit of Continental operations at Red Cloud to be $167,355.19 for the period from 9-31-71 to 6-30-76. Appellee then took 10 percent of that figure ($16,735.52), less the uncontroverted total bonus payment of $6,996.68 actually paid, to support his claim of the $9,738.84 underpayment. His accuracy at arithmetic was stipulated. The appellants introduced corporate tax returns for a similar period of time and took 10 percent of the net income to form a basis for their assertion that the bonus had been incorrectly *over*paid to the tune of $1,659.59. This court has already held that a review of the relevant books of the employer by the claimant, together with his own arithmetic and testimony of his conclusion of the amount due, is "sufficient" evidence to support a default judgment for the unpaid "10% Bonus of Net Profit" salary, and to award a default judgment for such amount in Morgan v. Weiner, 173 Neb. 715, 114 N. W. 2d 720. The technique used here was no different. No complaint was or is made of the manner in which the trial court submitted these issues to the jury or to its instructions on the law, and we have therefore not reviewed any of its actions in relation thereto.

It is our opinion that the fact issues were each controverted by the respective sides, that they were fairly tried at the trial of the case, that evidence ex-

ists supporting the verdict of the jury, and that the verdict is not clearly wrong. The judgment rendered by the trial court is accordingly affirmed.

AFFIRMED.