HAVELOCK BANK OF LINCOLN, APPELLANT, V. DUANE L. BARGEN, APPELLEE.

321 N.W.2d 432

Filed July 2, 1982. No. 44196.

Edward F. Carter, Jr., and Barney, Carter & Johnson, P.C., for appellant.

Stephen J. Ahl of Barlow, Johnson, DeMars & Flodman, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

McCOWN, J.

This is an action by the plaintiff bank to enforce a personal guaranty agreement executed by the defendant in connection with credit extended to a corporation. The jury returned a verdict for the plaintiff bank in the amount of $2,816.90. The bank has appealed.

The defendant, Duane L. Bargen, was the vice president and a director of Air Structures, Inc., and the owner of approximately 18 percent of its stock. The corporation manufactured blower assemblies for inflatable domes. In February 1978 the corporation had determined that operations would require $20,000 short-term and $80,000 long-term financing. The defendant and John Farrar, the president of the corporation, met with Gordon V. Kuhn, the president and chief executive officer of the plaintiff bank, to discuss the financing. The testimony of defendant and Farrar was that the financing discussed was a total loan package of $100,000, that the personal guaranties would be based on that total, composed of $80,000 long-term and $20,000 short-term debt, and that each stockholder of the corporation was to be liable for guaranteeing the fraction of the total

$100,000 which corresponded to his stock interest. Kuhn's testimony was that the only direct credit negotiated was the $20,000 short-term borrowing plus consideration .of additional credit at a later time. Kuhn advised the corporate officers that the bank would require a security interest in various assets of the corporation as collateral, as well as personal guaranties from principals of the corporation. He denied that the personal guaranties were based upon a total loan package of $100,000.

Personal guaranties were prepared by the bank and sent out to the principal stockholders of the corporation for signature. There were apparently seven individual guaranties sent out by the bank totaling $100,500. Each guaranty provided that, in consideration of credit given to the corporation, prompt payment up to the stated amount in the instrument was guaranteed on any and all notes, renewals, and other indebtedness of the corporation. The amount of each individual guaranty was in approximately the same percentage of $100,000 as the stock ownership of the individual in the corporation. By April 27, 1978, the bank had received five individual guaranties totaling $73,500. The defendant's guaranty in the sum of $18,000 was one of the five. Two guaranties, one for $7,000 and one apparently for $20,000, were never returned to the bank.

On May 1, 1978, Air Structures, Inc., executed a $20,000 note to the bank and a financing statement and security agreement giving the bank a security interest in certain equipment, inventory, and accounts receivable of the corporation. The bank delivered the $20,000 to the corporation on the same date.

The corporate officers testified that Kuhn informed them shortly thereafter that the bank would not advance the entire $100,000 and requested the corporation to establish who would be responsible for the outstanding $20,000 loan. Later in May 1978

the corporation held a meeting regarding the $20,000 loan and adopted a verbal resolution setting out the stock ownership of each shareholder and the percentage of debt responsibility of each. On June 6, 1978, a letter was sent to Kuhn at the bank. The letter stated: "Please consider this as an update to the Investor Guarantees earlier written. It has been adopted as a corporate resolution to have each of the investors, by percentage of ownership, be responsible for their share of the Havelock short term debt.

"It is then understood the individuals listed below shall be responsible as indicated: . . . ." Then followed the names of stockholders, each showing the number of shares of stock owned and the percentage of ownership, rounded to the nearest percentage point. The individual percentages totaled 100 percent. The defendant was listed as the owner of 1,300 of the 6,950 shares, and his percentage was rounded to 19 percent. The responsibility of each shareholder was to include principal and interest.

On June 7, 1978, Kuhn replied on behalf of the bank, acknowledging receipt of the letter of June 6, and stated that in the event of default "we understand that the individuals will assume their proportionate share of any loss . . . that the bank might incur." Kuhn testified that he acknowledged receipt of the letter of June 6 and gave his approval of the distribution.

On September 1, 1978, the $20,000 note was renewed until December 11, 1978, and on that date was again renewed to June 9, 1979. On December 30, 1978, the two smaller stockholders listed in the letter of June 6, 1978, paid $2,160 to the bank, which was their percentage of responsibility outlined in the June 6, 1978, letter. They were released by the bank from their liabilities on the $20,000 loan guaranties.

In a letter dated January 11, 1979, Kuhn advised the president of the corporation that the two smaller stockholders had been released from their guaran-

ties and that when the other guarantors paid their guaranteed portion of the corporate debt they would relieve themselves of any further obligation on their guaranties. In the same letter the bank declared the loan in default and demanded payment in full. Kuhn also wrote to the 20 percent stockholder who had never executed any guaranty and advised him that payment of his proportionate liability in accordance with the June 6, 1978, letter would release him from liability to the bank.

The parties stipulated that the principal amount due and owing on the $20,000 note is $12,669.17 plus interest, which at time of trial was $2,394.49. Air Structures, Inc., is insolvent and unable to make any further payment on the note.

The bank brought this action against the defendant Bargen on his individual guaranty of April 27, 1978, seeking to collect the full amount of the corporate indebtedness. The case was tried before a jury. The jury found that the defendant's guaranty became a guaranty based upon the proportionate stock ownership of each stockholder and returned its verdict for the plaintiff in the amount of $2,369.13 plus $447.77 interest, for a total of $2,816.90. The plaintiff has appealed.

The jury was instructed that if it found for the plaintiff and found that the guaranty of the defendant applied to the full obligation of Air Structures, Inc., it was to enter judgment of $12,669.17 principal and $2,394.49 interest, for a total of $15,063.66. The jury was also instructed that the burden was upon the defendant to prove by a preponderance of the evidence that the purported guaranty was modified after its execution. The jury was likewise instructed that if it found by a preponderance of the evidence that the defendant's guaranty was enforceable but was modified and became a guaranty upon the proportionate stock ownership of each stockholder, its verdict would be for the plaintiff in the

amount of $2,369.13 plus $447.77 interest, for a total of $2,816.90. Counsel had no objection to these instructions and, by agreement and stipulation of counsel, forms of verdict were submitted accordingly, together with a third form of verdict finding in favor of the defendant.

The plaintiff bank contends that the defendant's $18,000 guaranty was absolute, that the bank did not have the requisite intent to modify the agreement, and that there was no consideration for any modification. The bank also contends that the court erred in failing to sustain its motion to withdraw the issue of modification from the jury and in failing to instruct the jury in accordance with the bank's contentions.

A written executory contract may be modified by the parties thereto at any time after its execution and before a breach has occurred, without any new consideration; and the terms of a written executory contract may be changed by a subsequent parol agreement before a breach thereof. *W. Wright, Inc. v. Korshoj Corp.,* 197 Neb. 692, 250 N.W.2d 894 (1977).

The modification of a contract which substantially changes the liability of the parties ordinarily requires mutual assent to be effective. *Westbrook v. Masonic Manor,* 185 Neb. 660, 178 N.W.2d 280 (1970).

In the case at bar no breach of the guaranty or loan agreement had occurred at the time of modification except for the bank's announcement that it would not advance any long-term credit in the future, which resulted in defendant's demands for a revision of the agreement. The evidence is more than sufficient for the jury to have found that the bank's letter of June 7, 1978, expressed an assent to the modification proposal made on behalf of the individual guarantors and stockholders. The evidence also indicated that the bank's assent to the modification or new agreement or agreements was established by its conduct in accepting payments from

two individual stockholders for their shares of the $20,000 guaranty and releasing them from liability in accordance with the terms of the modification.

The bank contends that the court erred in failing to instruct the jury that the defendant's guaranty was an absolute personal guaranty for all sums not exceeding $18,000 without regard to the existence of guaranties of other persons and without regard to other forms of security. The trial court found that the bank's requested instruction tended to take the issue of modification from the jury, and therefore instructed the jury that if it found that the guaranty of the defendant applied to the full indebtedness of Air Structures, Inc., it should enter judgment for the plaintiff for the specified full amount. The court also instructed the jury that if it found that the defendant's guaranty was modified and became a guaranty upon the proportionate stock ownership of each stockholder, its verdict would be for the plaintiff in a specified proportionate amount. Neither instruction was objected to and both were tacitly approved by counsel. The instruction as to modification correctly stated the law and properly submitted the issue of modification to the jury. Jury instructions are to be read as a whole, and if they fairly submit the case they are not erroneous. A trial court is not required to give a requested instruction which unduly emphasizes a part of the evidence in the case. *First Mid America, Inc. v. Palmer,* 197 Neb. 224, 248 N.W.2d 30 (1976).

In the instant case there was substantial evidence to indicate that the parties either made a new and changed agreement with respect to the guaranty or modified the earlier agreement. The issue was a factual one and the jury's verdict indicates that it accepted the defendant's version of the facts. In determining the sufficiency of the evidence to sustain a verdict, the evidence must be considered most favorably to the successful party, every controverted

fact must be resolved in his favor, and he is entitled to the benefit of any inferences reasonably deducible from it. *Lockhart v. Continental Cheese, Inc.,* 203 Neb. 331, 278 N.W.2d 604 (1979).

The case before us is a law action tried to a jury. The verdict of the jury turned upon a determination of the factual issues based on conflicting evidence. The instructions covered the issues and fairly submitted the case to the jury. In a law action it is not within the province of the Supreme Court to weigh or resolve conflicts in the evidence. The credibility of witnesses and the weight to be given their testimony are for the trier of fact. A verdict by a jury based upon conflicting evidence will not be set aside unless it is clearly wrong. *Trout v. Olson Bros. Mfg. Co.,* 209 Neb. 477, 308 N.W.2d 522 (1981).

The judgment of the District Court was correct and is affirmed.

AFFIRMED.

CLINTON, J., concurring.

I do not believe it is correct to refer to the contract between the bank and the guarantors as executory. The loan had been made. Only the guaranty was executory. It seems to me the evidence supports a novation, i.e., the bank accepted new obligations in place of the old, and the jury verdict is supported by the evidence. See 66 C.J.S. *Novation* § 1 c. (1950).

CAPORALE, J., joins in this concurrence.