388 N.W.2d 807 (1986)
223 Neb. 135
GRAND ISLAND PRODUCTION CREDIT ASSOCIATION, a Federally Chartered Credit Association, Appellant,
v.
Beulah C. HUMPHREY, also known as Beulah C. Knox, and Carl M. Humphrey, Appellees.
No. 85-246.
Supreme Court of Nebraska.
June 13, 1986.
*808 Daniel M. Placzek of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, Grand Island, for appellant.
*809 John R. Hall of Anderson, Vipperman, Hinman, Hall & Kovanda, Grand Island, for appellee Beulah C. Humphrey.
KRIVOSHA, C.J., and BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.
KRIVOSHA, Chief Justice.
The Grand Island Production Credit Association (PCA) appeals from a judgment entered by the district court for Hall County, Nebraska, in favor of the PCA and against the appellee Beulah C. Humphrey in the amount of $5,000, together with interest from the date of the debt. A default judgment had earlier been entered in this case in favor of the PCA and against Carl M. Humphrey in the amount of $13,936.71. That judgment is now final and is not involved in this appeal. The only issue, therefore, is the correctness of the judgment entered by the district court against Beulah Humphrey in the amount of $5,000. The PCA had sought a judgment in the amount of $13,936.71. For reasons more particularly hereinafter set out, we believe the district court was in error, and the judgment must be reversed and remanded.
The evidence is virtually without dispute. The parties agree that on November 25, 1980, Mrs. Humphrey and her then husband, Carl, entered into a loan arrangement with the PCA. What is not clear from the record but what can be inferred is that at that time, on November 25, 1980, the Humphreys had a previous loan with the PCA and were already indebted in some amount not fully disclosed in the evidence. The execution of the agreement on November 25, 1980, was merely a renewal of an existing debt. The note, signed by both of the Humphreys, provided that on or before November 30, 1981, they each promised to pay to the PCA the amount due, not to exceed $50,000 plus interest. The note and supplemental agreement specially provided for future advances up to that total credit limit of $50,000, which may be made from time to time at the option of the PCA prior to the due date. The note also provided for interest on amounts outstanding at the rate of 12.85 percent per annum from date of disbursement until paid. The Humphreys also signed a supplemental agreement on November 25, 1980, which provided in part:
As long as the Borrower is not in default, the Association will lend to the Borrower, and the Borrower may borrow and repay and reborrow at any time from date of said "Line of Credit" Promissory Note in accordance with the terms thereof and prior to maturity thereof, up to an aggregate maximum amount of principal at any one time outstanding of $50,000....
The record further reflects that in December of 1980 Carl Humphrey met with a loan officer of the PCA and requested an advance in order to purchase 35 head of cattle, which apparently would cost Humphrey $11,340. Because of the $50,000 limit, the PCA was only authorized to advance $5,000 to Humphrey at that time but advised Humphrey that whenever the maximum amount of the loan was paid down, the PCA would advance the additional funds, and, in fact, on December 22, 1980, the PCA advanced $5,000 to apply to the purchase of the cattle. The balance of the purchase price was to be paid out at such time as the loan was paid down and fell below the maximum authorized.
The record further discloses that on February 25, 1981, 45 head of cattle, apparently purchased prior to the purchase of the last 35 head, were sold for the amount of $21,744.75 and the proceeds applied against the loan owed by the Humphreys to the PCA. Therefore, on March 3, 1981, the PCA advanced the remaining $6,340. These 35 head of cattle were subsequently sold for $20,505.20 and the proceeds applied against the joint debt of the Humphreys.
While Mrs. Humphrey does not deny any of these facts, she maintains that in January *810 of 1981, before the remaining $6,340 was actually advanced, she went to the office of the PCA and informed Hugh Doyle, a loan officer at the PCA, that she had left Mr. Humphrey and had filed for a dissolution of marriage. She also maintains that she advised Doyle not to advance any more moneys for cattle purchases and that, therefore, the advance made on March 3, 1981, of $6,340 was contrary to her agreement with the PCA. In effect, Mrs. Humphrey claims that the agreement by the PCA to fund the entire purchase price of the 35 head of cattle was a modification of the loan agreement. She concedes that neither the PCA nor Mr. Humphrey agreed that the balance due on the 35 head of cattle already purchased should not be advanced when authorized.
There is no question that unless the conversation that Mrs. Humphrey had with the PCA loan officer in January of 1981 relieved her of her obligation to pay the PCA, she is equally indebted to the PCA for the full amount of the debt which on January 22, 1985, was in the amount of $13,936.71, together with interest in the amount of $6,075.70 and accruing interest thereafter at the rate of $5.9401 per day. We believe Mrs. Humphrey was not so relieved. Under the provisions of Neb.U.C.C. § 3-413(1) (Reissue 1980), the maker of a note engages that he or she will pay the instrument according to its tenor at the time of his or her engagement. Mrs. Humphrey admits that she signed the promissory note and the supplemental agreement. Consequently, as a comaker of the note, she is jointly and severally liable for the obligations of the note. See Federal Farm Mtg. Corporation v. Adams, 142 Neb. 202, 5 N.W.2d 384 (1942).
The record simply does not establish any modification which in any manner would excuse Mrs. Humphrey from liability in this case. The commitment to loan the money for the 35 head of cattle was made in December of 1980, well before Mrs. Humphrey advised the PCA that she and Mr. Humphrey had separated and were in the process of obtaining a divorce. Had the PCA refused to advance the funds previously committed, it very well could have been held liable to Mr. Humphrey. Yankton Prod. Credit Assn. v. Larsen, 219 Neb. 610, 365 N.W.2d 430 (1985). Not only had the bank committed the $11,340 prior to receiving any notice from Mrs. Humphrey but had in fact proceeded to advance $5,000 of the amount committed. There is simply no basis for the district court to conclude that there had been any valid modification or that Mrs. Humphrey was not liable. She certainly was liable for the $50,000 that was advanced and outstanding prior to January of 1981. This amount was reduced to $13,936.71 only because first the 45 head and then the 35 head were sold and the entire proceeds applied against the debt of principal and interest. If Mrs. Humphrey was to be relieved of this obligation, it was a matter that she needed to arrange and take up with her husband in the divorce action. No such arrangement could, however, be binding upon the PCA, which entered into this transaction in reliance upon the promise of both Mr. Humphrey and Mrs. Humphrey that they would be liable and would pay the amounts so advanced.
Mrs. Humphrey's unilateral effort to rescind the earlier agreement to loan $11,340 for the purchase of the last 35 head of cattle was not effective, particularly since the PCA, in reliance of the joint promise of the parties to pay, had already advanced $5,000 of the promised $11,340. A modification of a contract which substantially changes the liability of the parties ordinarily requires mutual assent to be effective. See, Havelock Bank of Lincoln v. Bargen, 212 Neb. 70, 321 N.W.2d 432 (1982); Westbrook v. Masonic Manor, 185 Neb. 660, 178 N.W.2d 280 (1970). In the instant case there is no evidence of any such mutual assent. Moreover, under the facts, the PCA was unable, without Mr. Humphrey's concurrence, to assent to Mrs. Humphrey's efforts to modify the agreement. *811 The fact of the pending divorce was irrelevant. Further, the PCA's silence was not assent, and the contract of loan remained in effect without modification. W. Wright, Inc. v. Korshoj Corp., 197 Neb. 692, 250 N.W.2d 894 (1977). It was Mrs. Humphrey who was seeking to modify the contract, not the PCA.
The district court was correct, however, when it ordered Mrs. Humphrey to pay interest at the rate of 12.85 percent per annum from date of disbursement until paid. This was not an unliquidated debt but merely a claim which required computation to determine the exact amount due. On that basis the borrower is obligated to pay the interest in accordance with the terms of the contract. See, Classen v. Becton, Dickinson & Co., 214 Neb. 543, 334 N.W.2d 644 (1983); First Nat. Bank v. Bolzer, 221 Neb. 415, 377 N.W.2d 533 (1985).
The judgment of the district court is therefore reversed and the cause remanded with instructions to enter judgment in favor of the PCA and against Mrs. Humphrey in the amount of $13,936.71, together with interest in the amount of $6,075.70 as of January 22, 1985, and continuing interest at the rate of $5.9401 per day from and after January 22, 1985, until paid.
REVERSED AND REMANDED WITH DIRECTIONS.