Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/25/2024 09:06 AM CDT

Meisam Sedighi, appellant, v.
Schnackel Engineers, Inc., appellee.

___ N.W.3d ___

Filed October 25, 2024.    No. S-23-822.

1. **Courts: Judgments: Appeal and Error.** In appeals from the district court sitting as an appellate court, the immediate question is whether the district court erred in its appellate review of the county court's decision, but review of that question necessarily involves considering the decision of the county court.
2. **Small Claims Court: Judgments: Appeal and Error.** A judgment rendered by a small claims court is reviewed for error appearing on the record.
3. **Judgments: Appeal and Error.** When reviewing a judgment for error appearing on the record, the inquiry is whether the decision conforms to law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
4. ____: ____. Whether a decision conforms to law is, by definition, a question of law, to which an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below.
5. **Evidence: Words and Phrases.** Competent evidence is evidence that is admissible and tends to establish a fact in issue.
6. **Words and Phrases.** A decision is arbitrary when it is made in disregard of the facts or circumstances and without some basis which would lead a reasonable person to the same conclusion.
7. ____. A capricious decision is one guided by fancy rather than by judgment or settled purpose.
8. ____. The term "unreasonable" can be applied to a decision only when the evidence presented leaves no room for differences of opinion among reasonable minds.
9. **Trial: Judgments: Evidence: Appeal and Error.** Where neither party requests that the trial court make specific findings of fact and

conclusions of law, if there is a conflict in the evidence, the appellate court in reviewing the judgment rendered will presume that the controverted facts were decided in favor of the successful party.

10. **Verdicts: Presumptions: Appeal and Error.** Where a general verdict is returned for one of the parties, and the mental processes of the finder of fact are not tested by special interrogatories to indicate which issue was determinative of the verdict, it will be presumed that all issues were resolved in favor of the prevailing party, and, where a single determinative issue has been presented to the finder of fact free from error, any error in presenting another issue will be disregarded.

Appeal from the District Court for Douglas County, Shelly R. Stratman, Judge, on appeal thereto from the County Court for Douglas County, John E. Huber, Judge. Judgment of District Court reversed and remanded with direction.

Meisam Sedighi, pro se.

Kristin M. Probst Nalbach and Alexander S. Arkfeld, of Fraser Stryker, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## INTRODUCTION

Meisam Sedighi appeals from the district court's reversal of the judgment of the small claims court awarding him $3,000 from Schnackel Engineers, Inc., for "reimbursement" of money he paid to an immigration attorney for the preparation and filing of an application for permanent labor certification, commonly referred to as "PERM," the acronym for the legacy electronic filing system, "Program Electronic Review Management," of the U.S. Department of Labor (DOL).

The issue on appeal is whether Schnackel Engineers was relieved of its financial responsibility under 20 C.F.R. § 656.12(b) (2023) by the presence of an employment contract provision that purported to make an alien responsible for all costs related to the issuance of a permanent resident card,

colloquially referred to as a "green card" due to the historical color of the card.[1]

On these facts, we conclude that Schnackel Engineers was not relieved of its financial responsibility and find that the district court erred in finding error on the record of the small claims court. Accordingly, we reverse the judgment of the district court and direct it to reinstate the judgment of the small claims court.

## BACKGROUND

We recount the events underlying Sedighi's claim as established by email correspondence received into evidence by the small claims court.

### EMPLOYMENT NEGOTIATIONS

The record indicates that Sedighi was nearing completion of a master's degree in electrical and computer engineering from a university in the State of New York and was searching for employment in the United States. On January 10, 2023, Schnackel Engineers offered Sedighi a position via email, stating that it "will be able to give [Sedighi] the position, job stability, and growth opportunities, [he was] looking for." An offer letter was attached to the email but does not appear in the appellate record.

On January 12, 2023, Sedighi sought clarification from Schnackel Engineers on several "points," which included whether it would "accommodate applying for [his] green card from the first day of employment." Schnackel Engineers inquired as to "what exactly" Sedighi was "looking for" regarding his applying for a green card. Sedighi requested that it "help both on the paperwork side and the legal expenses" and asked whether Schnackel Engineers had its "own lawyer and legal team." Sedighi also provided Schnackel Engineers with a

---

[1] See U.S. Citizenship and Immigration Services, The Colorful History of the Green Card, https://www.uscis.gov/about-us/our-history/stories-from-the-archives/the-colorful-history-of-the-green-card (last visited Oct. 18, 2024).

cost estimate of such legal expenses that he had received from a Michigan immigration attorney.

The attorney's estimate identified the filing fees and corresponding attorney fees for itemized legal services: a $0 filing fee and a $3,000 attorney fee for "Perm/Labor Certification"; a $700 filing fee and $1,600 attorney fee for "I-140, Immigrant Petition for Alien Workers"; and a $1,225 filing fee and $1,700 attorney fee for "I-485 Adjustment of Status Application," "I-131 EAD," and "I-765 AP." The estimate also stated that the $3,000 fee "[m]ust be paid by the company" and indicated that additional "ad cost[s]" may arise, unless the employer already had advertisements for the employment position.

On January 13, 2023, Schnackel Engineers responded that it did not have its "own legal team" and sought clarification on whether Sedighi had a spouse or children "who [were] also involved." Sedighi confirmed that "it would be just" him and indicated that he believed the cost of applying for a green card would total approximately $10,000. In a subsequent email, Schnackel Engineers sought clarification as to the cost estimate that Sedighi provided. In response, Sedighi added the Michigan immigration attorney to the email chain and requested the attorney "verify what the final green card application dollar value would be" for Schnackel Engineers.

Schnackel Engineers replied to Sedighi, removing the attorney from the email chain, and stated that it had "a local employment attorney that [it] would work with." Schnackel Engineers sought clarification as to how Sedighi reached his approximated total amount of $10,000. Sedighi explained that the discrepancy was due to his estimate of an advertising fee, which the attorney would need to "calculate and add to the [total] fee" and was why he included the attorney in the prior email.

Schnackel Engineers responded that its "HR department [was] going to reach out to the employment attorney [it] work[s] with for a quick discussion on associated costs" and that it would "let [Sedighi] know once that discussion

occur[ed]." Thereafter, in response to Sedighi's prior email, the Michigan immigration attorney replied to Sedighi and Schnackel Engineers and explained the cost estimate and the possibility of legally required advertisement costs.

On January 17, 2023, Sedighi accepted Schnackel Engineers' offer of employment and informed it that he spoke with his "immigration lawyer" and "realized there is a possibility of filing for [his] own green card" by way of a "National Interest Waiver" (NIW). Schnackel Engineers then asked Sedighi whether his "immigration lawyer" gave him "any sort of insight into the timeframe involved in obtaining [his] green card through this avenue." Schnackel Engineers indicated that due to a time estimate it received from its employment attorney, it was concerned with Sedighi's ability to obtain his green card before his temporary student visa expired. Sedighi then emailed the Michigan immigration attorney concerning the timeline. The attorney responded that "[p]erm and pwage take 15 months. Then, he can file I140 and I485 concurrently. 6 months after filing I485, he can receive the EAD [(Employment Authorization Document)]. Thus, he should receive EAD within 2 years." Sedighi forwarded this email to Schnackel Engineers.

Thereafter, Schnackel Engineers emailed Sedighi on January 17, 2023, indicating that it "wanted to make sure [it was] comfortable with being able to offer [him] a position without fear of losing [him] because of immigration laws." The email included an "amended" offer letter as an attachment, which Schnackel Engineers amended "to indicate that [it would] enter [Sedighi] in the H-1B lottery [(a type of temporary non-immigrant employment visa)] and that the offer is contingent upon [him] pursuing [his] green card." The record does not contain a copy of the offer letter sent on January 17, but an offer letter dated January 18, 2023, contains the following provision: "You will pursue your green card through whatever means necessary, at your cost, in order to achieve full resident status before your F-1 CPT visa [(a type of temporary student

visa)] expires." It also stated that "Schnackel Engineers will enter you in the H-1B lottery in 2023 and 2024, if necessary."

Sedighi accepted this amended offer, "assuming" Schnackel Engineers would "help" him with "the green card paperwork." Schnackel Engineers replied that it was "happy to help with the paperwork." Sedighi then informed Schnackel Engineers that he would "also connect [it] with [the Michigan immigration attorney] to share the necessary documents."

### Filing of Paperwork

On January 18, 2023, upon Sedighi's request, the Michigan immigration attorney sent him documents named "Perm Checklist" and "Employer-Information," instructing Sedighi to "ask [his] employer to complete the attached employer information checklist." Sedighi forwarded this email to Schnackel Engineers, which requested Sedighi email "the signed offer letter and [it would] get started on the checklist."

On January 23, 2023, Sedighi sent his resume and the offer letter from Schnackel Engineers to another immigration law firm, inquiring as to his ability to apply for a green card via an NIW from the U.S. Citizenship and Immigration Services. Although this is the first evidenced communication, the record suggests that prior communications had already occurred between Sedighi and this immigration law firm. On January 26, the firm sent its final communication in the record, declining to take Sedighi's NIW case based on his qualifications and work history.

On February 18, 2023, Schnackel Engineers emailed Sedighi with "the completed employer information form, the perm checklist employer letter, and the perm checklist needed by [the Michigan immigration attorney]" and indicated that it had hard copies of the same ready to provide Sedighi on his first date of employment the following Monday. On February 20, Sedighi provided the Michigan immigration attorney with the two completed "perm forms." The next day, the attorney requested a $3,000 payment be made and confirmed that

a second payment would "be due after [Sedighi's] perm is approved and ready to file I140." Thereafter, Sedighi paid the attorney in two separate transactions via a digital payment service, totaling $3,000.

On March 6, 2023, Sedighi forwarded a question from the Michigan immigration attorney to Schnackel Engineers, inquiring as to its experience with filing green card applications. Schnackel Engineers replied to the attorney's email, indicating that it had "entered people into the H1B lottery" and currently had "an individual with an O1 [(a type of temporary non-immigrant employment visa)] who recently received an EB1 [(a type of permanent immigrant employment visa)] via an accepted I-140" and that it had "not sponsored an individual through the full Green Card process at [that] point." The attorney responded that she would guide Schnackel Engineers "to open accounts on the government websites and start the recruitment" process.

On March 7, 2023, Schnackel Engineers told the Michigan immigration attorney to inform the company "what [it] need[ed] to do when" and that it would "take care of it." The attorney responded with directions on how Schnackel Engineers could create the necessary accounts and "create a subaccount" for the attorney. Later that day, the attorney provided confirmation to Schnackel Engineers that "a prevailing wage" was filed "for this case under EB2 [(a type of permanent immigrant employment visa)] today," which needed "about 8 months to process."

### Interim Events Unclear

The record does not fully disclose the subsequent events but suggests that Sedighi was unhappy with Schnackel Engineers' work environment, believed its training schedule was disorganized, and was misled as to the conditions of its Omaha, Nebraska, office. On March 14, 2023, the primary employee with whom Sedighi was communicating sent him a letter of recommendation, and, on March 15, Sedighi requested that Schnackel Engineers "hold [his] H1B application so that if

it is picked in the lottery, [he could] transfer it to another company."

### Request for $3,000 Reimbursement

On March 21, 2023, Sedighi thought there had been a "misunderstanding in the green card fee payment" and, citing information available on the DOL's website, asserted that Schnackel Engineers was required to reimburse him the $3,000 that he paid the Michigan immigration attorney for the application for permanent labor certification filed with the DOL. On March 22, Schnackel Engineers denied Sedighi's request for reimbursement, pointing to his previous email wherein he indicated that he would be looking into filing for his green card via an NIW, which does not require employer sponsorship or have any employer costs associated with it, and to the offer letter provision that stated his pursuit of his green card would be at his cost.

On March 23, 2023, Sedighi clarified that he "mentioned" that a NIW was a "possibility" but that the Michigan immigration attorney told him that he did "not have enough publications to go that route." Sedighi again asserted that under 20 C.F.R. § 656.12(b), Schnackel Engineers was required to reimburse him for the $3,000 payment for the preparation and filing of the permanent labor certification application. Schnackel Engineers disagreed and contended that it was "not obligated nor willing to contribute toward [his] green card effort" because the offer letter's provision that Sedighi pursue a green card at his own cost was "legally binding" and he "should have recognized" that the provision "tied [him] into the NIW route when [he] signed it." Schnackel Engineers asserted that it was "not legally required to reimburse [Sedighi] for fees that were a result of something that [it] never agreed to."

Thereafter, Sedighi provided Schnackel Engineers notice of his intention to file a lawsuit if it continued to refuse to reimburse him the $3,000 that he had paid to the Michigan immigration attorney. Schnackel Engineers rejected this "demand for payment" through counsel.

COURT PROCEEDINGS

Sedighi filed suit in the small claims court of the county court for Douglas County. At trial, Sedighi argued that 20 C.F.R. § 656.12(b) mandates that an employer pay for all costs incurred in preparing and filing a permanent labor certification application and that because the Michigan immigration attorney prepared and filed a permanent labor certification application, Sedighi was entitled to reimbursement of the $3,000 fee.

Schnackel Engineers' director of accounting appeared on its behalf. Schnackel Engineers argued that it was not legally responsible for the $3,000 fee because it did not agree to pay for the permanent labor certification application; instead, Sedighi was to pursue applying for his green card via a NIW, which is obtained via "self-petition" and is unlike "other green cards" that require an employer to file a petition. Schnackel Engineers asserted that "[it] filed no petition on [Sedighi's] behalf. Whatever he did outside of work, [it] had no control over."

Although highly skeptical of Sedighi's claim at the hearing, the small claims court later entered judgment in favor of Sedighi. In its judgment, the court stated: "Pursuant to 20 C.F.R. § 656.12[,] the employer is responsible for all costs associated with PERM process." Schnackel Engineers appealed to the district court.

On appeal, Schnackel Engineers argued that the small claims court erred in its judgment because the $3,000 fee was Sedighi's "private attorney fees" and that it "never engaged with this attorney to do any labor certification work on [its] behalf." In its judgment, the district court agreed.

The district court found that "[t]he employment contract controls the parties' obligations in this case, and that document designates [Sedighi] would pursue his green card at his own expense." Acknowledging the small claims court correctly found that under 20 C.F.R. § 656.12, the employer is responsible for all costs associated with the PERM process,

it nevertheless found error on the record due to the employment agreement "being based on [Sedighi's] representation he would be seeking his green card through the NIW process" and 20 C.F.R. § 656.12 further providing that an alien may pay for his or own attorney.

It reasoned:

> In this case, [Sedighi] had already hired a lawyer and chose to pursue permanent labor certification through the PERM process on his own. [Schnackel Engineers] neither offered nor agreed to cover any expenses associated with the PERM process. The employment offer that was signed and accepted by [Sedighi] clearly indicates [Schnackel Engineers] would enter him into the H-1B lottery in 2023 and 2024, if necessary[,] and that he would be pursuing his green card at his cost in order to achieve full resident status before his F-1 CPT visa expires. [Sedighi] was pursuing permanent labor certification through the PERM process on his own and with his own lawyer.

Thus, the district court concluded that the Michigan immigration attorney represented Sedighi, not Schnackel Engineers.

Accordingly, the district court vacated the small claims court's judgment and entered judgment on behalf of Schnackel Engineers.

Sedighi filed a timely appeal, which we moved to our docket pursuant to Neb. Ct. R. App. P. § 2-102(C) (rev. 2022).[2]

## ASSIGNMENTS OF ERROR

Sedighi assigns, summarized and restated, that the district court erred in (1) finding that the Michigan immigration attorney was solely his attorney and (2) failing to conclude that the offer letter provision that he "pursue [his] green card through whatever means necessary, at [his] cost, in order to achieve full resident status" was void as a matter of law insofar as

---

[2] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

it required him to pay Schnackel Engineers' costs associated with the DOL application for permanent labor certification.

## STANDARD OF REVIEW

[1] In appeals from the district court sitting as an appellate court, the immediate question is whether the district court erred in its appellate review of the county court's decision, but review of that question necessarily involves considering the decision of the county court.[3]

[2,3] A judgment rendered by a small claims court is reviewed for error appearing on the record.[4] When reviewing a judgment for error appearing on the record, the inquiry is whether the decision conforms to law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[5]

[4-8] Whether a decision conforms to law is, by definition, a question of law, to which an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below.[6] Competent evidence is evidence that is admissible and tends to establish a fact in issue.[7] A decision is arbitrary when it is made in disregard of the facts or circumstances and without some basis which would lead a reasonable person to the same conclusion.[8] A capricious decision is one guided by fancy rather than by judgment or

---

[3] *State v. Jennings*, 308 Neb. 835, 957 N.W.2d 143 (2021).

[4] See Neb. Rev. Stat. §§ 25-2733 and 25-2807 (Reissue 2016). See, also, Neb. Rev. Stat. § 25-1911 (Reissue 2016). Cf. *State v. Jennings, supra* note 3.

[5] *Wright v. Southwest Airlines Co.*, 315 Neb. 911, 2 N.W.3d 186 (2024).

[6] See, *Konsul v. Asensio*, 316 Neb. 874, 7 N.W.3d 619 (2024); *Wright v. Southwest Airlines Co., supra* note 5.

[7] *Cain v. Custer Cty. Bd. of Equal.*, 315 Neb. 809, 1 N.W.3d 512 (2024).

[8] *Fountain II v. Douglas Cty. Bd. of Equal.*, 315 Neb. 633, 999 N.W.2d 135 (2024); *In re Guardianship of Benjamin E.*, 289 Neb. 693, 856 N.W.2d 447 (2014).

settled purpose.[9] The term "unreasonable" can be applied to a decision only when the evidence presented leaves no room for differences of opinion among reasonable minds.[10]

## ANALYSIS

At trial before the small claims court and on appeal before the district court, Schnackel Engineers did not dispute that under 20 C.F.R. § 656.12(b), it would ordinarily be responsible for attorney fees related to the preparation and filing of an application for permanent labor certification.[11] Instead, Schnackel Engineers asserted that it was not responsible for the Michigan immigration attorney's fees because it never agreed to file an application for permanent labor certification and Sedighi pursued that course on his own, outside of its "control."

Although the small claims court rejected Schnackel Engineers' argument, the district court found it to be meritorious on appeal. On its review of the record, the district court found that the Michigan immigration attorney was solely Sedighi's attorney and that 20 C.F.R. § 656.12(b) does not require an employer to pay an attorney to represent an alien. The district court erred in this finding.

As we set forth above, a judgment rendered by a small claims court is reviewed for error appearing on the record,[12] wherein the appellate court's inquiry is limited to whether the decision conforms to law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[13]

---

[9] *Uhrich & Brown Ltd. Part. v. Middle Republican NRD*, 315 Neb. 596, 998 N.W.2d 41 (2023); *In re Guardianship of Benjamin E., supra* note 8.

[10] *Fountain II v. Douglas Cty. Bd. of Equal., supra* note 8.

[11] Cf. *Magtoles v. United Staffing Registry, Inc.*, 665 F. Supp. 3d 326 (E.D.N.Y. 2023) (denying summary judgment of plaintiff's state law claims involving violation of 20 C.F.R. § 656.12(b)).

[12] See §§ 25-2733 and 25-2807. See, also, § 25-1911. Cf. *State v. Jennings, supra* note 3.

[13] *Wright v. Southwest Airlines Co., supra* note 5.

In its judgment, the district court stated this correct standard for its review and framed its conclusion as finding "error on the record." But in substance, the district court did not apply this standard.

The only issue in the small claims court was whether Schnackel Engineers was responsible for the Michigan immigration attorney's fees for preparing and filing the permanent labor certification application under 20 C.F.R. § 656.12(b). That DOL regulation provides in relevant part:

> An employer must not seek or receive payment of any kind for any activity related to obtaining permanent labor certification, including payment of the employer's attorneys' fees, whether as an incentive or inducement to filing, or as a reimbursement for costs incurred in preparing or filing a permanent labor certification application . . . . An alien may pay his or her own costs in connection with a labor certification, including attorneys' fees for representation of the alien, except that where the same attorney represents both the alien and the employer, such costs shall be borne by the employer.[14]

In the small claims court, Sedighi argued that he was entitled to reimbursement of the attorney fees because the Michigan immigration attorney prepared and filed an application for permanent labor certification. Schnackel Engineers argued that it was not responsible for the attorney fees because it did not agree to such preparation and filing. The small claims court found Schnackel Engineers was responsible for the Michigan immigration attorney's fees. Two statutory provisions are particularly relevant to our review of the district court's judgment. First, "All matters in the Small Claims Court shall be tried to the court without a jury."[15] And second, "Upon the trial of questions of fact by the court, it shall not be necessary for the court to state its finding, except, generally,

---

[14] 20 C.F.R. § 656.12(b).

[15] Neb. Rev. Stat. § 25-2805 (Reissue 2016).

for the plaintiff or defendant, unless one of the parties request it . . . ."[16]

[9,10] Where neither party requests that the trial court make specific findings of fact and conclusions of law, if there is a conflict in the evidence, the appellate court in reviewing the judgment rendered will presume that the controverted facts were decided in favor of the successful party.[17] We have referred to this principle as the "general verdict rule": Where a general verdict is returned for one of the parties, and the mental processes of the finder of fact are not tested by special interrogatories to indicate which issue was determinative of the verdict, it will be presumed that all issues were resolved in favor of the prevailing party, and, where a single determinative issue has been presented to the finder of fact free from error, any error in presenting another issue will be disregarded.[18]

Rather than applying the general verdict rule, the district court's judgment reveals that either it presumed the small claims court failed to consider what party or parties the Michigan immigration attorney represented or it conducted a review de novo on the record, as it made independent factual determinations based upon the record and reached its own independent conclusions with respect to the matter at issue.[19] In either situation, the district court erred by not presuming that the small claims court found that the Michigan immigration

---

[16] Neb. Rev. Stat. § 25-1127 (Reissue 2016). See, also, *Fee v. Fee*, 223 Neb. 128, 388 N.W.2d 122 (1986); *Modern Woodmen of America v. Lane*, 62 Neb. 89, 86 N.W. 943 (1901).

[17] *Hall v. County of Lancaster*, 287 Neb. 969, 846 N.W.2d 107 (2014), *overruled on other grounds, Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017); *Foiles v. Midwest Street Rod Assn. of Omaha*, 254 Neb. 552, 578 N.W.2d 418 (1998).

[18] See *de Vries v. L & L Custom Builders*, 310 Neb. 543, 968 N.W.2d 64 (2021).

[19] See *Medicine Creek v. Middle Republican NRD*, 296 Neb. 1, 892 N.W.2d 74 (2017).

attorney represented both Sedighi and Schnackel Engineers and proceeding to review the record for competent evidence in support of that finding. To the contrary, our review of the record of the small claims court shows this finding was supported by competent evidence.

The record shows that Schnackel Engineers was aware that an employment-based visa was the method by which Sedighi could obtain a green card and that it viewed the position it offered to Sedighi as full-time, permanent employment. Indeed, it had a "fear of losing [Sedighi] because of immigration laws," and its employment offer required Sedighi to "pursue [his] green card through *whatever means necessary . . .* in order to achieve full resident status." (Emphasis supplied.) The Merriam-Webster dictionary provides that "whatever" means "any" and "all."[20] Thus, by the unambiguous terms of the offer letter, Sedighi was obligated to pursue his green card through any and all means necessary and was not limited to pursuing his green card via a NIW.

The record also shows that Schnackel Engineers substantively and actively participated in the preparation and filing of the application for permanent labor certification.[21] In February and March 2023, it completed PERM paperwork, directed Sedighi to provide the completed paperwork to the Michigan immigration attorney, and created a "subaccount" to facilitate the Michigan immigration attorney's filing of the application. Without Schnackel Engineers' affirmative

---

[20] Merriam-Webster's Collegiate Dictionary 1423 (11th ed. 2020).

[21] Cf., *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. 848, 809 N.W.2d 725 (2011); *Havelock Bank of Lincoln v. Bargen*, 212 Neb. 70, 321 N.W.2d 432 (1982); *Hagerbaumer v. Hagerbaumer Brothers, Inc.*, 208 Neb. 613, 305 N.W.2d 4 (1981); *Walsh v. Lunney*, 75 Neb. 337, 106 N.W. 447 (1905); *Bowman v. Wright*, 65 Neb. 661, 91 N.W. 580 (1902), *affirmed on rehearing* 65 Neb. 666, 92 N.W. 580. See, generally, 17A C.J.S. *Contracts* §§ 551 at 484 ("parties have the right to and are free to amend their contract") and 552 at 486 ("[a]ny contract, however made or evidenced, can be discharged or modified by a subsequent agreement of the parties") (2020).

participation in the PERM process, the Michigan immigration attorney would not have been able to prepare and file an application with the DOL.

There is competent evidence in the record that supports finding Schnackel Engineers provided the Michigan immigration attorney authority to file the application for permanent labor certification on its behalf and that in doing so, the attorney represented Schnackel Engineers. Accordingly, the district court erred in finding error on the record of the small claims court and in vacating the judgment of the small claims court and entering judgment on behalf of Schnackel Engineers.

## CONCLUSION

Competent evidence supports the judgment of the small claims court. Therefore, it should have been affirmed. Hence, we reverse the judgment of the district court and direct the district court to reinstate the judgment of the small claims court.

Reversed and remanded with direction.